UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALNANDO SISSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-01249-GCS |
| | ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant's motion for summary judgment. (Doc. 112, 113, 123). Specifically, Defendant argues that it is entitled to summary judgment as Plaintiff has failed to produce evidence establishing that it discriminated against him because of Plaintiff's race. This is because Defendant had a legitimate reason for placing Plaintiff on administrative leave and suspending his employment, and Plaintiff has not offered evidence establishing the proffered reasons were pretextual. Plaintiff opposes the motion arguing that he has made a prima facie case of rase discrimination and that he has provided evidence Defendant's reasons were pretextual and motivated by racial discrimination. (Doc. 115).[1] For the reasons outlined below, the Court **GRANTS** the motion.

---

[1] The Court notes that Plaintiff did not follow the Local Rules in responding to Defendant's motion for summary judgment. Plaintiff did not respond to Defendant's statement of facts as required by the Local Rules. *See* Local Rule 56.1(b). Further, Plaintiff, in his "Statement of Facts"

On November 29, 2021, Plaintiff Alnando Sisson ("Sisson") filed an amended complaint against the Illinois Department of Corrections ("IDOC") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. 48). Sisson, who at the time of the events was a Correctional Officer at Southwestern Correctional Center ("Southwestern"), alleges that he was discriminated against because of his race following a physical altercation at work on December 12, 2017, with fellow Correctional Officer Joseph Kinsey. He alleges that he was placed on administrative leave and suspended from his employment following this altercation.

## FACTS[2]

Sisson, an African American male, began working for the IDOC in 1998. He served as a Correctional Officer at Southwestern for approximately 19 years prior to the altercation. During his tenure at IDOC, Sisson was promoted several times. Currently, he is employed as a Correctional Lieutenant at Centralia Correctional Center ("Centralia").

On December 12, 2017, near the beginning of the midnight shift around 10:00 p.m., a physical altercation occurred between Sisson and Correctional Officer Kinsey at Southwestern.[3] Correctional Officer Joseph Kinsey is a white male. Prior to the

---

and "Adverse Employment Actions Against Plaintiff" did not cite to the record, except for citing to his own deposition, as required by the Local Rules. *See* Local Rule 56.1(c).

[2] In accordance with Local Rule 56.1(f) and (g), the Court disregards facts not supported with a citation to the record, and the Court deems admitted material facts that have not been specifically disputed.

[3] Sisson testified to the following about the incident:

Q. Okay. Why did you approach Mr. Kinsey?

A. There was a report from a female correctional officer to me as union steward at the time that she was being verbally harassed by Correctional Officer Kinsey.
. . .

A. I went to him, said, hey, I'm a union steward. It's reported to me by female staff that he was harassing and bullying her. . . . I identified myself, told him who I was, and told him only that a female staff reported something to me. At that particular time the first words out of his mouth was: Fuck you, as in me. Get the fuck out of my face.
. . .

Q. So when he said that to you, did he touch you in any manner?
A. No, not at that time.
Q. What happened after he said that to you?
A. After he said that, I told him who I was again and told him I'm coming at him in a professional manner and that I'm not speaking to him in an incorrect manner. I did not use any curse words or anything. Then that's when he said it again.
Q. Okay. And then what happened after he said it again?
A. At that moment I broke down to him what I had knew about the situation that was brought to me. I told him it was inappropriate, it was unprofessional, and we both should be professional as staff members.
Q. Okay. Then what happened?
A. At that particular moment we just kind of going back and forth, which I was doing the majority of the talking, and which I think he began to get agitated, and that's when he took his radio and took a swing at me.
Q. Okay. Did he take a swing at you with his radio or something else?
A. Yes, his radio was in his – his radio was in his right hand.
Q. Did it strike you? Did the radio strike you?
A. Luckily – luckily, no, sir, it did not.
Q. Okay. What happened after that?
A. After I ducked out of the way of the radio, I remember I punched him a couple of times. He grabbed me. I grabbed him. He tried to use the van as momentum to kick me, and that's when I slammed him out of the van because he was – he was holding onto the door and the van to try to kick me, and he – and I grabbed him off the van and slammed him to the ground.
Q. Were either you or Kinsey carrying a weapon at that time?
A. At that time as an outer patrol assignment, CO Kinsey should have had a weapon somewhere on him maybe.
Q. Did you see of that weapon ever dislodged during this confrontation?
A. No, I did not.
. . .

Q. At any time were you on top of Kinsey?
A. Yes.
Q. Okay. How so?
A. After I slammed him to the ground, I was on top of him, and instead of me hitting him, I think I grabbed him and told him don't ever try to swing at me, threaten me again.
Q. And did you every physically strike him with your fist or your feet or legs?

altercation, Sisson worked a different shift than Correctional Officer Kinsey, and the two had little interaction with each other.

Correctional Sergeant Eddie Rumph, an African American male, and Correctional Sergeant Ronald Swanson, an African American male, witnessed the altercation and prepared incident reports.[4] Sisson's Correctional Sergeant, Claude Heimburger, a white male, responded to the incident but did not witness the incident. Major Gary MacQuarrie, a white male, also responded to the incident. After observing Correctional Officer Kinsey with a bloody lip and swelling to his left cheek area, Major MacQuarrie instructed Correctional Officer Kinsey to visit healthcare. Correctional Officer Kinsey indicated that he wanted to press charges against Sisson.

At no point during the altercation was Sisson's race mentioned.[5]

As a result of the altercation, Sisson was placed on paid administrative leave from December 14, 2017, through June 29, 2018.

---

A. I struck him with my fist at the beginning of the confrontation after he swung the radio at me.
Q. What part of – did you actually strike any part of his body with your fist?
A. Yes, I struck the left side of his face with my right fist.

(Doc. 113-1, p. 29, 37-40).

[4] During the altercation, Rumph witnessed Sisson on top of Kinsey, but did not see him throwing punches. (Doc. 115-1, p. 14, 17). Also, during the altercation, Swanson witnessed Sisson walking to Kinsey's outer patrol van, saw Sisson standing in between the van door and Kinsey, saw the van rocking side to side, and saw Sisson's body and arms moving as if throwing "blows." *Id* at p. 19, 21.

[5] Plaintiff further testified to the following in his deposition:
Q. And so during this confrontation at any point did Ken make any reference to your race?
A. No, not that I heard.

(Doc. 113-1, p. 40).

Eventually, the Illinois State Police ("ISP") was contacted, and the ISP initiated a criminal investigation, 18CF767.

On May 22, 2018, Sisson was arrested for felony aggravated battery. That same day, the Employee Review Board ("ERB") held a hearing to determine whether Sisson should be suspended for violating multiple employee rules.

On June 30, 2018, Sisson was suspended without pay pending the outcome of the criminal charges. This determination was signed by Major C. Davis, an African American female, and Warden Ron Vitale, a white male.

On November 26, 2018, a bench trial was held on Sisson's criminal charges. Sisson was acquitted, and the criminal charges were dismissed. Sisson returned to work for the IDOC on December 2, 2018, after the dismissal of the criminal charges. Sisson was transferred to Centralia. At Centralia, Sisson applied for and was promoted to Correctional Sergeant. Thereafter, he applied for and was promoted to Correctional Lieutenant.

Correctional Officer Kinsey was not arrested, and the ERB did not hold a hearing as to him.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material

fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding [,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance*

*Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

Finally, at the summary judgment stage it is not the Court's role to "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). *See also Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (noting that courts are not required to scour the record looking for factual disputes or piece together appropriate arguments). Instead, the Court "is only tasked with deciding whether, based on the evidence of the record, there is any material dispute of fact that requires a trial." *Buell*, 796 F.3d at 756.

Additionally, as outlined in Local Rule 56.1(g), "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for purposes of summary judgment unless specifically disputed." Consequently, when a party fails to respond as outlined in Local Rule 56.1, "we depart from our usual deference towards the non-moving party" and accept all of the moving parties' "unopposed material facts as true." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). "Nevertheless, the Court is cognizant that 'a nonmovant's

failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law.'" *Pratt v. Bebout*, Case No. 3:21-CV-1262-MAB, 2024 WL 1013920, at *3 (S.D. Ill. March 8, 2024) (quoting *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)).

### DISCUSSION

At summary judgment, the "singular question" for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the employer took an adverse action against him because of a statutorily proscribed factor – in this case, race. *Purtue v. Wisconsin Department of Corrections*, 963 F.3d 598, 602 (7th Cir. 2020) (citing *Johnson v. Advocate Health & Hospitals Corporation*, 892 F.3d 887, 894 (7th Cir. 2018)). *See also Abrego v. Wilkie,* 907 F.3d 1004, 1012 (7th Cir. 2018) (stating that "[t]o succeed on a Title VII claim, the plaintiff-employee must prove three elements: [1] he is a member of a class protected by the statute, [2] that he has been the subject of some form of adverse employment action . . . and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class."). To answer that question, the court must evaluate all the relevant, admissible evidence. *See, e.g., Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) (stating that "all evidence belongs in a single pile and must be evaluated as a whole."). *See also Chatman v. Board of Education of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021) (the court must "look at the evidence holistically."); *David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (noting that "*Ortiz* explicitly instructed district courts to stop

separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards.").

A discrimination claim can be analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chatman*, 5 F.4th at 746; *Purtue*, 963 F.3d at 601–602; *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018); *David*, 846 F.3d at 224. The *McDonnell Douglas* approach requires the plaintiff to establish a prima facie case of discrimination without proving a direct causal link by showing that: (1) he is a member of a protected class; (2) he met the employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *See Lauderdale v. Illinois Department of Human Services*, 876 F.3d 904, 910 (7th Cir. 2017) (citation omitted); *Lewis*, 909 F.3d at 866; *David*, 846 F.3d at 225 (citation omitted). If the plaintiff can establish a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for the actions taken against the plaintiff. *David*, 846 F.3d at 225. The plaintiff must then "submit evidence that the employer's explanation is pretextual." *David*, 846 F.3d at 225.

However, the plaintiff need not rely on the *McDonnell Douglas* framework to establish a case of race discrimination. *See Purtue*, 963 F.3d at 601–602; *Joll v. Valparaiso Community Schools*, 953 F.3d 923, 929 (7th Cir. 2020); *David*, 846 F.3d at 224. Instead, the plaintiff can proffer direct or circumstantial evidence that satisfies the elements of the discrimination claim and "point[s] directly to a discriminatory reason for the employer's action." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). *See also Joll*, 953 F.3d at 929; *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (staring that "[t]he direct method requires the

plaintiff to simply present evidence satisfying the elements of the [discrimination] claim . . . ."). There are three broad types of circumstantial evidence that will support an inference of intentional discrimination: "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Purtue*, 963 F.3d at 602 (quoting *Joll*, 953 F.3d at 929).

The *McDonnell Douglas* framework is relevant as Sisson contests the reasons for him being placed on paid administrative leave and placed on suspension and asserts that those reasons were pretextual.[6]

Defendant argues that Sisson failed to show that his race was a motivating factor as to either him being placed on paid administrative leave on December 13, 2017, or him being suspended from employment on June 20, 2018. Specifically, Defendant argues that it had a legitimate non-discriminatory reason for placing Sisson on paid administrative leave on December 13, 2017, *i.e.*, the physical altercation with Officer Kinsey, who had visible injuries from that altercation. It also had legitimate non-discriminatory reasons for suspending Sisson's employment on June 30, 2018, *i.e.*, his May 22, 2018 arrest for felony aggravated battery, and the ERB, after holding a hearing on May 22, 2018, finding that

---

[6]  For the purposes of this motion, the Court need not address whether Plaintiff has established a prima facie case of race discrimination. The Court instead focuses on the issue of pretext. *See, e.g., Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002) (stating that "[i]t is not always necessary to march through this entire process [analysis of a prima facie case] if a single issue proves to be dispositive. Here, as is often true, that issue is pretext or the lack thereof.").

Sisson violated employee rules during the December 12, 2017, incident.[7] Sisson avers that the explanations are pretextual as Officer Kinsey was not disciplined, investigated, or placed on paid administrative leave or suspended for his actions in the altercation and that Defendant has not explained why Officer Kinsey was treated differently. The Court agrees with Defendant.

"Pretext is a lie, specifically a phony reason for some action." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008) (internal quotation marks and citations omitted). Thus, "to show pretext, a plaintiff must show that (1) the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on a discriminatory intent." *Id.* "Pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason given by an employer for an adverse employment action." *Downing v. Abbott Laboratories*, 48 F.4th 793, 804 (7th Cir. 2022) (internal quotation marks and citations omitted). "So, in evaluating pretext, the focus is on what the decisionmakers knew, and their perceptions are 'controlling.'" *Id.* (quoting *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010)). "[T]he pretext inquiry turns on honesty, not correctness, and even if we assume a less severe punishment might have been more

---

[7] Defendant also argues that being placed on paid administrative leave is not an adverse employment decision. The Court agrees with Defendant that in this case Sisson being placed on paid administrative leave is not an adverse employment action. *See, e.g.*, *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 722, 786-787 (7th Cir. 2007) (holding that placing an officer on paid administrative leave pending the conclusion of an investigation is not a materially adverse action). However, assuming *arguendo* that it is an adverse employment action, the Court will address Plaintiff being placed on paid administrative leave.

appropriate, that fact does not, without more, provide evidence of pretext." *Liu v. Cook County*, 817 F.3d 307, 318 (7th Cir. 2016).

Pretext is not established simply because the plaintiff denies the proffered reasons. The Seventh Circuit recently reiterated this notion when it stated:

> Shures contends on appeal that, because he denies all of the employer's findings concerning poor performance, a jury trial is required to resolve the dispute. This misunderstands what is necessary to establish pretext. Most fired employees believe that they have unrecognized or underappreciated talents. But it does not matter what the employee believes; the question is what the employer believes. To establish pretext, the plaintiff must show that the employer does not believe its own explanation – that it is lying rather than just making an error. *See, e.g., Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008); *Bragg v. Munster Medical Research Foundation Inc.*, 58 F.4th 265, 271 (7th Cir. 2023).

*Shures v. Ameren Illinois Company*, No. 23-2761, 2024 WL 1756338, at *1 (7th Cir. April 24, 2024).

In the case at bar, Defendant placed Sisson on paid administrative leave the day after the altercation. As a result of this altercation, Officer Kinsey suffered visible injuries to his face, went to the health care unit immediately afterwards, and expressed his wishes to press charges against Sisson. There is no indication in the record that Officer Kinsey's desire to press charges against Sisson was because he is African American. Rather, it was due to the physical altercation. Further, as to Defendant placing Sisson on paid administrative leave, there is no evidence that Defendant did so based on Sisson's race. There is also no evidence to suggest that Defendant's reasons for doing so were not based on anything other than Officer Kinsey's physical injuries. In short, Sisson has not shown Defendant's decision was based on a lie or dishonesty. Thus, as to Sisson's claim that he

was placed on paid administrative leave because of his race, the Court finds that Defendant is entitled to summary judgment.

Similarly, there is no evidence that Defendant's decision to suspend Sisson on June 30, 2018, was based on a lie or dishonesty held by the Defendant. Defendant contends that it suspended Sisson after the criminal charges were filed against him on May 22, 2018, and after the ERB's finding that Sisson's conduct on December 12, 2017, violated several employee rules. The Court also notes that the ERB's recommendation for suspension was signed by Major Davis, an African American female, which weighs against Sisson's claim. *See, e.g.*, *Menefee v. Dynamic Educational Systems, Inc.*, No. 07 C 6396, 2008 WL 4866016, at *3 n.3 (N.D. Ill. June 17, 2008) (stating that "there can be no compelling inference of discrimination when the decision-maker is in the same protected category as the plaintiff.").

Further, Sisson, without citing to the record, contends that Defendant's investigation relied on inaccurate, false, or incomplete evidence, which thus undermines Defendant's reasons for suspending him. Specifically, Sisson maintains that Sgt. Melvin made statements to the Grand Jury that were later contradicted by other witness testimony and physical evidence.[8] Sisson also maintains that witnesses, Correctional Sergeant Rumph and Correctional Sergeant Swanson, demonstrated that he acted in self-

---

[8] The record reflects that Sergeant Melvin is an Illinois State Police Investigator involved in Sisson's criminal investigation. Sergeant Melvin is not employed by the IDOC.

defense and that Kinsey initiated the physical confrontation by attempting to strike him with the radio.[9]

Sisson's argument misses the mark. The reason Defendant suspended Sisson was because of the pending criminal charges against him. Once those pending criminal charges were dismissed, Defendant promptly retuned Sisson to work. Further, Sisson has not established that the investigation was unreliable. The Court has read Correctional Sergeant Swanson's and Correctional Sergeant Rumph's statements, and they do not establish definitively that Sisson acted in self-defense or that Kinsey was the aggressor as argued by Sisson. As stated previously, both men stated that they did not see how the altercation started. Simply put, Sisson failed to present evidence that his suspension was based on his race.

Sisson's case also falls short under the holistic evidence framework. This framework requires a court to determine whether all the relevant evidence "would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. A court must ask "whether the totality of the evidence shows discrimination, eschewing any framework of formula." *Igasaki v. Illinois Department of Financial and Professional Regulation*, 988 F.3d 948, 958 (7th Cir. 2021). Relevant evidence includes smoking-gun evidence such as a defendant's "actual admission of discriminatory intent." *See Bagwe v. Sedgwick Claims Management Services, Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citing *Mullin v. Temco Machinery, Inc.*, 732

F.3d 772, 775 (7th Cir. 2013)). Circumstantial evidence, such as evidence that the employer's stated reasons for suspending the plaintiff were pretextual, is also relevant. *See Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). As the Seventh Circuit made clear in *Ortiz*, all the "evidence belongs in a single pile and must be evaluated as a whole" to determine discriminatory intent. 834 F.3d at 766.

The only evidence of race discrimination that Sisson identifies is that Officer Kinsey, a white male, was not investigated, charged with a crime, or suspended as he was. However, immediately after the incident, Officer Kinsey stated that he wanted to press charges against Sisson, and the police were called to investigate. The record does not reflect that Sisson pursued charges against Officer Kinsey. In the final analysis, when the evidence is considered "in a single pile," which consists only of the fact that Sisson is a member of a protected class, no reasonable juror could find that he was suspended because of his race. Defendant is entitled to summary judgment.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment. (Doc. 112). The Court **FINDS** in favor of Defendant Illinois Department of Corrections and against Plaintiff Alnando Sisson. Lastly, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED.**

**DATED: September 19, 2025.**

Digitally signed by Judge Sison
Date: 2025.09.19 09:59:53 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**